**FALCOAL, INC., Plaintiff,**

v.

**TURKIYE KOMUR ISLETMELERI KURUMU, Defendant.**

**Civ. A. No. H–85–6576.**

United States District Court,
S.D. Texas,
Houston Division.

May 27, 1987.

**1538**

Judith A. Meyer, William W. Vernon, Fulbright & Jaworski, Houston, Tex., for plaintiff.

Richard H. Caldwell, Thomas M. Farrell, Mayor, Day & Caldwell, Houston, Tex. (Margaret Murphy, Owen C. Pell, White & Case, New York City, of counsel), for defendant.

## MEMORANDUM OPINION AND ORDER

HITTNER, District Judge.

Pending before this Court is Defendant's Motion to Dismiss. Having considered that motion, the submissions of the parties, the argument of counsel, and the applicable law, the Court is of the opinion that Defendant's Motion should be granted.

### Factual Background

Plaintiff Falcoal, Inc., formerly P & O Falcoal, Inc. (Falcoal) is an American corporation having its principal place of business in Houston, Texas. Defendant Turkiye Komur Isletmeleri Kurumu (TKI) is a commercial entity, owned and controlled by the Turkish government. One of the functions of TKI is to provide for Turkey's energy requirements.

Until 1984, TKI apparently obtained 100 percent of the coal utilized by Turkey from Turkish miners and suppliers. In 1984, however, TKI decided to import a portion of Turkey's coal supply. In an attempt to solicit bids, TKI issued a notice announcing a "sartname" ("terms and conditions"). This announcement was made in local Turkish-language publications. Falcoal was one of the firms that responded by asking for a copy of the sartname. The sartname distributed by TKI was issued in Turkish and provided by its terms that any

conflicts as to its terms would be settled by reference to the original Turkish language version.

Falcoal submitted the bid that was ultimately accepted by TKI. Falcoal's bid was signed and submitted by its authorized agent, Zihni Dis Ticaret Ve Pazarlama A.S. (Zihni), a Turkish company.

The negotiation of the contract took place entirely in Ankara, Turkey. Falcoal officials came to Ankara for the negotiations. All negotiations were conducted in Turkish, with Zihni negotiating for Falcoal.

After the parties had agreed to the terms, Zihni prepared two copies of the contract, an English version and a Turkish version. Both versions were signed by TKI and Falcoal in Ankara. Although the parties assert that they believed the content of the two versions to be identical, the English contract and the Turkish contract contain forum selection clauses which directly contradict each other. The Turkish-language version provides:

> In the case of any dispute between SUPPLIER and PURCHASER arising out of the application or interpretation of the articles of the Agreement, not being settled amicably between the parties, the final jurisdiction for the settlement of such disputes, in the case of the PURCHASER [TKI] submitting a claim, lies within the jurisdiction of the Houston commercial courts and, in the case of the SUPPLIER [Falcoal] submitting a claim lies within the jurisdiction of the Ankara commercial courts.

The English-language contract, by contrast, provides that any dispute

> shall be finally settled in Houston and submitted to the jurisdiction of the Courts of the U.S.A. if the claim is put forward by Supplier [Falcoal] and in Ankara, Turkey, and submitted to the Turkish Courts if the claim is put forward by Buyer [TKI].[1]

Pursuant to the contract, Falcoal was to deliver 100,000 tons of coal to a shipper of TKI's choice. Falcoal agreed to post a

---

1. The English version appears that it may have been altered, the words "Supplier" and "Buyer" having apparently been reversed.

performance bond in an amount equal to 10 percent of the contract price and, pursuant to this agreement, Citibank International-Ankara issued a performance bond in favor of TKI in the amount of $400,000. This bond was secured by a letter of credit opened by Falcoal at Citibank International-Dallas.

The contract further provided that, to secure payment for the coal, TKI was to open a letter of credit in New York forty-five days before shipment. TKI failed to open this letter of credit. When the coal was not shipped, TKI, allegedly wrongfully and without authorization, drew on Falcoal's performance bond. Falcoal subsequently brought this suit against TKI alleging breach of contract for failing to open the New York letter of credit in Falcoal's favor, conversion and fraud for wrongfully drawing on Falcoal's performance bond, and injury to Falcoal's business reputation. TKI has moved to dismiss, alleging lack of subject matter jurisdiction, lack of personal jurisdiction, and improper venue.

### Subject Matter Jurisdiction

■ TKI asserts that this Court lacks subject matter jurisdiction because TKI, as an entity of the Turkish government, has sovereign immunity. Falcoal admits that TKI is a governmental entity and thus subject to the Foreign Sovereign Immunities Act of 1976 (FSIA), 28 U.S.C. § 1602 *et seq.* (1982). However, Falcoal contends that TKI falls within the exceptions to sovereign immunity set forth in section 1605 of the FSIA.

Falcoal maintains that the following provisions of section 1605 are pertinent:

(a) A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case—

(1) in which the foreign state has waived its immunity either explicitly or by implication, notwithstanding any withdrawal of the waiver which the foreign state may purport to effect except in accordance with the terms of the waiver;

(2) in which the action is based upon a commercial activity carried on in the United States by the foreign State; or upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States;

28 U.S.C. § 1605 (1982).

The Court turns first to Falcoal's contention that section 1605(a)(1) applies to the facts of this case. Falcoal contends that TKI has implicitly waived sovereign immunity by consenting, through the forum selection clauses, to the jurisdiction of the Houston courts. In support of this position, Falcoal cites a number of cases in which it has been held that an agreement to arbitrate in the United States waives sovereign immunity in the United States. *See, e.g., Ohntrup v. Firearms Center, Inc.,* 516 F.Supp. 1281, 1284–85 (E.D.Pa. 1981), *aff'd,* 760 F.2d 259 & 263 (3d Cir. 1985). Falcoal argues that, by analogy, a forum clause providing for suit in the United States should be read as an implicit waiver of sovereign immunity.

This Court would find merit to Falcoal's argument, were the English version forum clause the only clause at issue. However, the Court cannot ignore the existence of the Turkish contract, whose forum clause provides for suit in Houston only should TKI choose to sue. That contract expressly provides for suit *against* TKI in Turkey. TKI, moreover, contends that the Turkish version is the valid version and that, in fact, to enforce the English-language copy would force TKI to violate Turkish law, which requires all foreign entities to use the Turkish language in their contracts with Turkish companies. *See* Cerrahoglu Affidavit ¶ 3; Altiok Affidavit ¶ 4. Clearly, under the facts of this case where, as here, there are two contradictory forum clauses and where the issue of which forum clause should control is vigorously contested, the English-language clause cannot be said to constitute a waiver of sovereign immunity.

The Court next reviews Falcoal's argument that TKI's actions place it within the exceptions to sovereign immunity set forth in section 1605(a)(2).

■ Falcoal cannot seriously contend that TKI's activities place it within the first of these exceptions. Clearly this action is not one "based upon commercial activity carried on [by TKI] in the United States." The FSIA defines such commercial activity as activity "having substantial contact with the United States." 28 U.S.C. § 1603(e) (1982). The only act of TKI which might possibly be construed as being "in the United States" is the contractual agreement to open a letter of credit in New York and the subsequent failure to do so. The mere provision for payment in the United States, however, is not a "substantial contact" meeting the test for commercial activity under the FSIA. *Exchange National Bank v. Empresa Minera Del Centro Del Peru S.A.*, 595 F.Supp. 502, 504 (S.D.N.Y. 1984); *Verlinden B.V. v. Central Bank of Nigeria*, 488 F.Supp. 1284, 1296 (S.D.N.Y. 1980), *aff'd on other grounds*, 647 F.2d 320 (2d Cir.1981), *rev'd on other grounds*, 461 U.S. 480, 103 S.Ct. 1962, 76 L.Ed.2d 81 (1983).

■ Likewise, this action does not fall within the second exception set forth in section 1605(a)(2) since it is not based "upon an act performed in the United States in connection with a commercial activity of [TKI] ... elsewhere." Again, the only conceivable act by TKI in the United States is its failure to open a letter of credit in New York. This failure to act cannot constitute an "act performed in the United States" by TKI. *See Verlinden B.V. v. Central Bank of Nigeria*, 488 F.Supp. at 1297; *Exchange National Bank v. Empresa Minera Del Centro Del Peru S.A.*, 595 F.Supp. at 504.

It remains for this Court to determine whether TKI's conduct falls within the third clause of section 1605(a)(2), i.e. whether the conduct alleged against TKI constitutes "an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere" which "causes a direct effect in the United States." At issue is the definition of "direct effect."

■ The conduct complained of in this action is TKI's drawing upon the performance bond allegedly wrongfully and without authorization. The effect this action had in the United States was a financial effect to Falcoal, a United States corporation. It is clear that, under certain circumstances, a purely financial effect does not suffice as a "direct effect" for purposes of negating sovereign immunity. For example, the commission of a tort by a foreign sovereign on its own soil physically injuring an American citizen does not constitute a "direct effect" in the United States simply because the American citizen is financially injured. *Harris v. VAO Intourist, Moscow*, 481 F.Supp. 1056, 1065 (E.D.N.Y. 1979). However, "[u]nlike a natural person, a corporate entity is intangible; it cannot be burned or crushed. It can only suffer financial loss." *Texas Trading & Milling Corp. v. Federal Republic of Nigeria*, 647 F.2d 300, 312 (2d Cir.1981), *cert. denied*, 454 U.S. 1148, 102 S.Ct. 1012, 71 L.Ed.2d 301 (1982). Whether a tort or a breach of contract committed against a corporation causes a direct effect in the United States cannot be so simply determined.

It might seem reasonable, when a controversy involves corporate entities, to give the word "direct" its common meaning and hold that financial injury to an American corporation indeed has a direct effect in the United States. This Court is, however, cautioned against so summary an action by the provision of 28 U.S.C. § 1330(b), which states: "Personal jurisdiction over a foreign State shall exist as to every claim for relief over which the district courts have jurisdiction under subsection (a) where service has been made under Section 1608 of this title." [2] Given its plain meaning, section 1330(b) provides that subject matter jurisdiction plus service of process equals

---

**2.** Neither party to this action asserts that service was not properly achieved pursuant to section 1608.

personal jurisdiction. Thus, in finding a "direct effect," and, consequently, an exception to sovereign immunity, the Court might be creating personal jurisdiction where it rightly does not exist.

The case before us presents such a possibility. TKI asserts, and Falcoal has not shown otherwise, that it has had no contacts with the Texas forum, nor in fact with the United States, other than its involvement in the contract which is the subject of this suit. That contract was solicited, negotiated, drafted, and executed in Turkey and in the Turkish language. The contract itself does not establish minimum contacts with the Texas forum. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 105 S.Ct. 2174, 2185, 85 L.Ed.2d 528 (1985). Nor does TKI's agreement to pay through a letter of credit in New York create personal jurisdiction. *See C & H Transportation Co., Inc. v. Jensen & Reynolds Construction Co.,* 719 F.2d 1267 (5th Cir.1983), *cert. denied,* 466 U.S. 945, 104 S.Ct. 1930, 80 L.Ed.2d 475 (1984); *American Steel, Inc. v. Cascade Steel Rolling Mills, Inc.,* 425 F.Supp. 301, 303 (S.D.Tex.1975), *aff'd,* 548 F.2d 620 (5th Cir.1977). Falcoal has pointed to no act committed by TKI by which TKI purposefully availed itself of the privileges of conducting business within the United States. *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958) (citing *International Shoe v. Washington,* 326 U.S. 310, 319, 66 S.Ct. 154, 159, 90 L.Ed. 95 (1945)), or pursuant to which TKI should have reasonably anticipated being haled into court in Texas. *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980). Thus, in the instant case the constitutional requirements for exercise of in personam jurisdiction are lacking. If section 1330(b) is to be literally construed, in holding that subject matter jurisdiction exists based upon the financial effect created by TKI's conduct, the Court would find itself in the position of having also "created" personal jurisdiction where the minimum contacts mandated by the due process clause of the United States Constitution do not exist. *See International Shoe v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945).

In an effort to resolve the tension between 28 U.S.C. § 1605(a)(2) and 28 U.S.C. § 1330(b), courts have taken two approaches. Some have held that an effect cannot reach the level of "direct" effects described in the statute and thus sovereign immunity cannot be overcome, unless the effect fulfills the "minimum contacts" requirement of *International Shoe. See, e.g., Carey v. National Oil Corp.,* 592 F.2d 673, 677 (2d Cir.1979); *East Europe Domestic International Sales Corp. v. Terra,* 467 F.Supp. 383, 388–89 (S.D.N.Y.), *aff'd mem.,* 610 F.2d 806 (2d Cir.1979). Other courts have given "direct effect" its literal meaning and found such an effect when an American corporation has suffered a direct financial injury due to a foreign sovereign's conduct. *Texas Trading & Milling Corp. v. Federal Republic of Nigeria,* 647 F.2d at 308; *Crimson Semiconductor, Inc. v. Electronium,* 629 F.Supp. 903, 906 (S.D.N.Y.1986). Recognizing that a statute cannot create personal jurisdiction where the requirements of due process have not been met, these courts have construed section 1330(b) to provide merely a statutory jurisdiction and have engaged in the further step of making a due process scrutiny of the court's power to exercise in personam jurisdiction. *Texas Trading,* 647 F.2d at 308; *Crimson Semiconductor, Inc.,* 629 F.Supp. at 906–07.

This Court finds the latter approach to be most reasonable. The Court holds that the conduct of TKI in drawing on Falcoal's performance bond was an action which caused a direct effect in the United States, and thus TKI cannot claim sovereign immunity from this suit. Subject matter jurisdiction, therefore, exists.

### Personal Jurisdiction

Because TKI lacks of sovereign immunity in this action, and because neither party contends that service was not properly accomplished pursuant to section 1608, statutory in personam jurisdiction over TKI has been established. As the above discussion indicates, however, there has been no show-

ing of the minimum contacts by TKI with the United States necessary to satisfy the due process requirements of the Constitution. Constitutionally, therefore, this Court cannot exercise personal jurisdiction over TKI unless TKI has taken some action which may be construed as an expression of waiver or implied consent to the exercise of such jurisdiction. *See, e.g., Hess v. Pawloski,* 274 U.S. 352, 356, 47 S.Ct. 632, 633, 71 L.Ed. 1091 (1927).

 Falcoal contends that such an implied consent is found in the forum selection clause of the English version contract. This Court could find waiver, however, only if it were found that the Turkish-language clause is unenforceable and the English version valid. Falcoal urges the Court to do so because of "fraud, overreaching, undue influence or overweaning bargaining power" on the part of TKI. Falcoal argues that TKI acted fraudulently in concealing the true content of the Turkish contract from Falcoal. This Court might find Falcoal's position convincing had Falcoal alone participated in the contract negotiations. However, Falcoal was represented by a Turkish agent who prepared both contracts. If Falcoal was in fact duped as to the contents of the Turkish contract, its allegations of fraud would appropriately be asserted against its agent, Zihni. In the absence of any evidence of collusion between Zihni and TKI, this Court cannot find the Turkish-language version of the contract unenforceable by TKI because of fraud. Similarly, because both parties are presumably sophisticated in business matters and because Falcoal was represented by an agent fully conversant in the Turkish language, the Court is unable to find overreaching or and unequal bargaining power on the part of TKI.

 The Court thus faced with the existence of two contradictory clauses, must look to the law of the appropriate forum to determine which clause to enforce. Because the contract was solicited, negotiated and executed in Turkey, Turkish law must apply. *See Duncan v. Cessna Aircraft Co.,* 665 S.W.2d 414, 420–21 (Tex.1984).

 Both parties agree that, were Texas law to apply, the existence of contradictory clauses would evidence a lack of meeting of the minds on the issue of forum for suit, and the clause should be dropped from both contracts.[3] In the absence of a forum selection clause, there would be no waiver or consent, and because TKI lacks minimum contacts in the United States, this Court would lack personal jurisdiction over TKI. Falcoal maintains, however, that in the absence of a determination of similar Turkish law, the clauses cannot be eliminated from the contract.

The Court need not search Turkish law to determine the proper course of action upon a showing of a lack of meeting of the minds. The Court need only look to Turkish Law No. 805 for guidance. That law clearly provides that all transactions involving Turkish companies must be in Turkish and that, in the event that an additional language is used, the Turkish contract governs. Affidavit of Cerranoglu and Exhibit B attached thereto.

Pursuant to the Turkish contract, Falcoal's suit must be pursued in Ankara. Thus TKI has not consented to be sued in Houston, and this Court lacks in personam jurisdiction over TKI.

*Venue*

Because this Court lacks personal jurisdiction over TKI, the issue of the propriety of venue in this district is moot. However, the Court notes that even had the Court found the existence of personal jurisdiction, venue in the Texas forum would be inappropriate.

Venue under the FSIA is provided by 28 U.S.C. § 1391(f), which provides in pertinent part:

(f) A civil action against a foreign state as defined in section 1603(a) of this title may be brought—

(1) in any judicial district in which a substantial part of the events or omissions giving rise to the claim occurred,

---

**3.** Neither party has asserted that rescission of the contract is appropriate in this case.

or a substantial part of property that is the subject of the action is situated;

. . . . .

(3) in any judicial district in which the agency or instrumentality is licensed to do business or is doing business, if the action is brought against an agency or instrumentality of a foreign state as defined in section 1603(b) of this title;

As the previous discussion makes clear, TKI's lack of contacts with Texas makes none of the above provisions applicable to this suit. Falcoal argues that the last clause of section 1391(f)(1) applies because "the property at issue, Falcoal's corporate assets and its business reputation, are located here." This argument is without merit. This Court is unaware of any case law construing the meaning of "property that is the subject of the action." Falcoal's interpretation would make venue proper in the district in which a corporation's assets lie any time a corporation sues claiming it has been financially damaged. The more reasonable construction of the clause would make it applicable to suits involving property disputes or in rem actions, not, as here, to suits alleging financial damages to a corporation.

### Conclusion

Although this Court finds that TKI has been divested of its sovereign immunity to this suit by its actions in Turkey having a direct effect in the United States and, thus, subject matter jurisdiction exists, the Court finds that it lacks in personam jurisdiction over TKI. It is therefore

ORDERED that Turkiye Komur Isletmeleri Kurumu's Motion to Dismiss be, and is hereby, GRANTED.