George E. MERCIER and Susan Y. Mercier, Plaintiffs,

v.

SHERATON INTERNATIONAL, INC. a/k/a ITT–Sheraton International, Inc., Defendant.

Civ. A. No. 90–10067–MA.

United States District Court, D. Massachusetts.

Aug. 10, 1990.

Francis Joseph Bousquet, Herlihy & O'Brien, Boston, Mass., James M. Hartman, Harris, Beach & Wilcok, Rochester, N.Y., for plaintiffs.

David S. Mortensen, Hale & Dorr, Boston, Mass., for defendant.

MEMORANDUM AND ORDER

MAZZONE, District Judge.

This case comes before me on defendant's motion to dismiss based on the doc-

trine of forum non conveniens, or, alternatively, plaintiffs' failure to state a claim upon which relief can be granted. Fed.R. Civ.P. 12(b)(6). The plaintiffs, Susan Y. Mercier and her father George E. Mercier ("plaintiffs" or "Merciers"), have filed suit against Sheraton International, Inc. ("Sheraton") alleging breach of two contracts and conspiracy with a third party to "interfere with and induce a breach of the contracts aforesaid." Sheraton has filed this motion claiming that the suit should be adjudicated in the Republic of Turkey.

Although the central issues concerning contract formation and performance are in dispute—and otherwise beyond the scope of this memorandum—, there appears to be little disagreement over the following facts. Sheraton is a Delaware corporation headquartered in Boston, Massachusetts. It operates hotels and resorts throughout the world. At all relevant times during this case, Sheraton has operated the Istanbul Sheraton Hotel in Istanbul, Turkey (the "Hotel") through its Merkezi Boston Turkiye Subesi Istanbul division. Sheraton leases the Hotel from Taksim Otelcilik A.S., a Turkish–Moslem investment company affiliated with Vakiflar, a Turkish bank.

During the summer of 1982, Susan Mercier operated a casino aboard a Greek registered cruise ship. This ship regularly called at the Port of Istanbul. During one of these stops, Mercier came into contact with William A. Bauer, the general manager of the Hotel. According to Mercier, Bauer suggested to her that she form a partnership with Fethi Deliveli, a citizen of Turkey, to operate a casino the Hotel was planning to open on the premises.[1] Sometime in 1983, Mercier and Deliveli drafted and signed with Bauer, acting as representative for the Hotel, an undated "Memorandum of Understanding". The gist of this document was that Mercier, her father George, and Deliveli would rent space in the Hotel to operate a casino. The memorandum further outlined the obligations and responsibilities of each party. Finally,

it stated that the agreement would take effect "only after approval of the Sheraton Corporation in Boston has been obtained" and "subject to the [Merciers and Deliveli] obtaining the necessary permits from the Turkish Government."

Following the signing of this agreement, George Mercier began efforts to obtain financing for slot machines which were to be used in the casino. The Merciers also entered into a formal partnership with Deliveli called Lidya Turistik Tesisler Isletmesi A.S. ("Lidya"). Lidya was owned primarily by Deliveli's family but George Mercier apparently contributed substantial capital to the organization in exchange for which he and Susan were to actually operate the casinos at both the Hotel and another hotel on the coast of Turkey.

On March 3, 1984, Lidya, through Deliveli, signed a Protocol with Sheraton, which was again represented by Bauer. The substance of this document was that Sheraton and Lidya agreed that Lidya would place slot machines in certain areas of the Hotel; the parties further agreed as to their individual duties and responsibilities to each other in the operation of the casino. The Protocol also stated: "This agreement will come to force subject to approval of the concept of gambling by [Taksim Otelcilik A.S.] and after the realization of Mercier participation in Lidya." Finally, it stipulated "[t]his agreement will be governed by Turkish laws and the jurisdiction will [sic] Istanbul, Turkey."

There is much dispute about what took place in subsequent years. Of especial importance are the facts that Deliveli and the Merciers went their separate ways sometime in 1985; that the Merciers then entered into some form of contractual relationship with Leisure Investments, P.L.C. ("Leisure")[2] in late 1985–early 1986 to operate the Casino at the Hotel; and finally, that Susan Mercier fled Turkey in the spring of 1986, apparently after a violent altercation with a Turkish citizen resulted

---

1. Apparently, foreigners were required to take on Turkish citizens as business partners. Bauer recommended Deliveli for this purpose, among others.

2. The third party with whom Sheraton allegedly conspired.

in her being accused of attempted murder. Plaintiffs claim that after these events, Sheraton entered into a separate agreement with Leisure to operate the casinos without the Merciers.

As stated, Sheraton seeks to dismiss this action on the grounds of forum non conveniens, or, alternatively failure to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6). The doctrine [3] of forum non conveniens essentially allows a court to dismiss a case on the grounds that the action would be more appropriately brought in another forum. The ultimate inquiry in any forum non conveniens analysis is determining where trial will best serve the convenience of the parties and the ends of justice. *Koster v. Lumbermens Mutual Casualty Co.*, 330 U.S. 518, 527, 67 S.Ct. 828, 833, 91 L.Ed. 1067 (1947); *Lacey v. Cessna Aircraft Co.*, 862 F.2d 38, 42 (3rd Cir.1988).

Modern forum non conveniens jurisprudence is rooted firmly in the principles set forth by the Supreme Court in *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947) and its companion *Koster.* In *Gilbert*, the Supreme Court determined that the Federal District Court in New York had the inherent authority to dismiss an action brought by a Virginia plaintiff against a Pennsylvania defendant which did business in New York over an event which took place in Virginia. In reaching that conclusion, the Court articulated a set of substantive guidelines which have since formed the criteria by which forum non conveniens motions are measured.

The first guideline is that in all cases in which the doctrine of forum non conveniens comes into play, there is a presumption that at least two fora exist where defendant is amenable to process. *Gilbert*, 330 U.S. at 506–07, 67 S.Ct. at 842; *Tramp Oil & Marine, Ltd. v. M/V Mermaid I*, 743 F.2d 48, 50 (1st Cir.1984).[4] Dismissal in one forum is only proper upon a supported finding that another adequate forum exists where plaintiff can litigate essentially the same claim. *Id.* at 50; *Lacey*, 862 F.2d at 43.

The Court next acknowledged that it was extremely difficult to categorize specific circumstances which justify dismissal on forum non conveniens grounds. "The doctrine leaves much to the discretion of the court to which plaintiff resorts[.]" *Gilbert*, 330 U.S. at 508, 67 S.Ct. at 843. It went on to specify certain factors which should guide a district court now known popularly as "private interest" factors and "public interest" factors. Private interest factors were defined as follows:

> An interest to be considered, and the one likely to be most pressed, is the private interest of the litigant. Important considerations are the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive.

*Id.* at 508, 67 S.Ct. at 843.

Added to this list of considerations was the question of whether a judgment obtained in another forum is enforceable. *Id.* at 508, 67 S.Ct. at 843. The Court defined public interest factors as follows:

> Factors of public interest also have a place in applying the doctrine. Administrative difficulties follow for courts when litigation is piled up in congested centers instead of being handled at its origin. Jury duty is a burden that ought not to be imposed upon the community which has no relation to the litigation.... There is a local interest in having localized controversies decided at home. There is an appropriateness, too, in having the trial of a diversity case in a forum that is at home with the state law that must govern the case, rather than

---

**3.** It is understood that Sheraton is bringing its action pursuant to the traditional equitable remedy of forum non conveniens and not the statutory remedy set forth in 28 U.S.C. § 1404(a).

**4.** This principle presupposes, of course, that venue is proper and that the court otherwise has jurisdiction over the case. *Gilbert*, 330 U.S. at 504, 67 S.Ct. at 841.

having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself.

*Id.* at 508–09, 67 S.Ct. at 843.

The Court reminded lower courts that "unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Id.* at 508, 67 S.Ct. at 843.

These principles have withstood the test of time. In 1981, the Supreme Court revisited *Gilbert* and reaffirmed its approach to forum non conveniens issues. In *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981), the Court ruled that plaintiffs from Scotland who were suing American manufacturers in strict liability for an alleged defect in an airplane which was assembled in Pennsylvania but was owned and operated by a British concern and ultimately crashed in Scotland could have their action dismissed from a Pennsylvania Federal Court on forum non conveniens grounds.

The District Court in *Piper Aircraft* granted defendants' motions to dismiss forum non conveniens. *Id.* at 238, 102 S.Ct. at 257. The Court of Appeals for the Third Circuit reversed, in part because it concluded that an adequate alternative forum could not exist where the substantive law in that forum was less favorable to the plaintiff than the law in the forum plaintiff had brought suit. *Id.* at 238, 102 S.Ct. at 257. The Appeals Court also believed that the District Court had misapplied *Gilbert. Id.* at 244, 102 S.Ct. at 260.

The Supreme Court first rejected the Third Circuit's conclusion about less favorable substantive law, saying "[t]he possibility of a change in substantive law shall ordinarily not be given conclusive or even substantial weight in the forum non conveniens inquiry." *Id.* at 247, 102 S.Ct. at 261. The Court then examined the opinion of the District Court. As part of its analysis, the Court fully canvassed the *Gilbert* private and public interest considerations and, applying them to the particular facts, concluded that the District Court had made the appropriate ruling. *Piper Aircraft,* 454 U.S. at 257–61, 102 S.Ct. at 266–69. *See also Van Cauwenberghe v. Biard,* 486 U.S. 517, 528, 108 S.Ct. 1945, 1953, 100 L.Ed.2d 517 (1988).

It is quite obvious that a forum non conveniens inquiry is highly fact specific. Thus, while case law may provide guidance, a court must apply the *Gilbert* factors in its own particular way. The burden, of course, is on the movant to satisfy all elements of the forum non conveniens inquiry. *Lacey,* 862 F.2d 43–44. With these considerations in mind, I now turn to the specifics of the instant case.

First, it should be noted at the outset that jurisdiction and venue in this district are proper; Sheraton has challenged neither. However, Sheraton contends that Turkey provides an available, adequate alternative forum to this court. In support of its argument, Sheraton has provided an affidavit from Yucel Sayman, a professor of law and practicing attorney in Istanbul.[5] According to Dr. Sayman,

> [t]he courts of Istanbul are competent to hear the claims stated in the complaint filed by the Merciers.... In such a civil proceeding before our courts the litigants are guaranteed the same sort of procedural safeguards I understand they enjoy in the United States. They are entitled to be heard, to present evidence, and to cross examine their opponent's witnesses. The judgment of the trial court is subject to review by an appellate tribunal called, "Yargitay"–Court of Appeals. Our constitution grants standing to foreign nationals, such as the Merciers, to prosecute such commercial claims in our courts.

The Merciers argue that Turkey is not an available forum because Susan is still want-

---

**5.** This affidavit was originally used by the Sheraton Corp., the parent of the defendant in this action, in support of its motion for dismissal forum non conveniens in a case brought by the Merciers in the United States District Court for the Western District of New York. Sheraton Corp. was dismissed from that case because it was not the correct party defendant since it had signed none of the contracts at issue in the case. An action against Leisure is still pending in that court. I believe the affidavit is applicable to this case.

ed for attempted murder there and thus can not return to press her claim without putting herself in great personal jeopardy. They also contend that Yucel Sayman's affidavit is inadequate. Specifically,

> [i]t does not explain the substantive law of Turkey governing contract or conspiracy claims. It does not discuss statutes of limitations or fee arrangements in Turkey or deal with the issue of whether or not Turkey would take jurisdiction over this matter which involves only parties who are United States citizens and corporations.

Plaintiffs' Motion in Opposition to Dismissal at 20–21, *Mercier v. Sheraton International, Inc.*, (C.A. 90–10067–MA).

Sheraton responds that whatever Susan's personal difficulties with Turkish authorities may be, they are irrelevant to its motion. It also points out that there is nothing about Susan's troubles that prevents George from going to Turkey alone to press their claims. Finally, it stands on Dr. Sayman's affidavit about the adequacy of Turkish law.

■ There are three circumstances under which courts have found that an adequate alternative forum does not exist: 1) When the defendant is not "amenable to process" in the other forum; 2) when the proposed alternative forum does not permit litigation of the subject matter of the dispute; and 3) in rare circumstances, when the remedy offered by the other forum is clearly unsatisfactory. *Piper Aircraft,* 454 U.S. at 254 n. 22, 102 S.Ct. at 265 n. 22; *Travelers Indemnity Company v. S/S Alca,* 710 F.Supp. 497, 502 (S.D.N.Y.), *aff'd without opinion* 895 F.2d 1410 (2nd Cir. 1989).

I conclude that Turkey does provide an adequate alternative forum. Two factors inform this conclusion. First, while plaintiffs have raised several legitimate questions about the nature of Turkish law, they do not refute the substance of Dr. Sayman's affidavit which, although sparse, does address several areas of concern, such as standing, cross examination and the Turkish court's competence to hear the claims at issue. Second, there is no specific indication that any one of the three grounds for finding the absence of an alternative forum have been satisfied.

■ Before conducting a private interest analysis, a word about Susan Mercier's personal difficulties is in order. While I am not unsympathetic to her plight, I believe that it does not satisfy the criteria either for determining that an alternative forum does not exist or for a favorable private interest analysis. Her situation does not affect Sheraton's amenability to suit in Turkey; nor does it affect the competence of the Turkish court to hear the case. As for the existence of an adequate remedy, I believe the real question underlying her situation is not whether a remedy exists but whether she will be able to obtain one through a trial on the merits. In other words, a remedy is unavailable to Susan not because it does not exist but because Susan feels she is not in a position to obtain it. I do not believe that this circumstance is what the courts have contemplated when they have denied forum non conveniens dismissal motions on the grounds that no remedy was available. *See Rasoulzadeh v. Associated Press,* 574 F.Supp. 854, 861 (S.D.N.Y.1983), *aff'd without opinion* 767 F.2d 908 (2nd Cir.1985) and *Itek Corp. v. First National Bank of Boston,* 566 F.Supp. 1210, 1216 (D.Mass. 1983), *aff'd* 730 F.2d 19 (1st Cir.1984). In both of these cases, the court took notice of the severe changes that had taken place in Iran which made it unlikely that plaintiff could even get to court let alone obtain a remedy. This is not the case in Turkey. That country is not undergoing the same upheaval that beset Iran during the 1980s and there is no reason to believe that attempting to litigate a claim in Turkey would be futile. Instead, Susan faces the choice of either returning to Turkey at her own risk or limiting the perceived strength of her case by not presenting it in person.

Moreover, I am persuaded by Sheraton's argument that there is nothing preventing George from going to Turkey to press their claims. The one word of caution I would add is that Susan must be afforded an

opportunity to present her evidence through affidavits and depositions, etc. Assuming that she is able to do so, I believe a Turkish court will be able to competently and fairly judge the Merciers' complaint. For the reasons just stated, I also believe that Susan's situation is not the kind of practical consideration which influences a private interest analysis.

■ Turning now to the private interest factors, Sheraton states that its primary concern is that certain witnesses which it believes are crucial to its defense are beyond the compulsory process powers of the federal courts. Specifically, it wishes to call Fethi Deliveli, representatives from Taksim Otelcilik A.S. and various officials from the Turkish Government. Sheraton claims these witnesses can not be compelled to come to America to testify. Moreover,

> because the Republic of Turkey is not a signatory to the Hague Convention on the Taking of Evidence Abroad in Civil or Commercial matters ... Sheraton International would not even be able to compel these witnesses to give deposition testimony in Turkey for later use at a trial in the United States.

Defendant's Motion to Dismiss at 8–9, *Mercier v. Sheraton International, Inc.* (C.A. 90–10067–MA).

Sheraton also claims that even if these witnesses agreed to testify in the United States, they would require substantial translation services not only for themselves but also for the documents they bring. "The cost of such translations would be unduly burdensome for Sheraton International and for this Court. These translation costs are relevant to the forum non conveniens inquiry, and, here, they clearly weigh in favor of dismissal." *Id.* at 9.

Plaintiffs do not dispute that Sheraton's witnesses are beyond compulsory process.[6] Rather, they argue that Sheraton's witnesses are not, in fact, key. However, even if they are, they contend that they should be willing to appear on Sheraton's

behalf without compulsion because they have had close contractual and personal relations with Sheraton Istanbul and its personnel. As for translating the testimony and documents of Turkish citizens, the Merciers state: "Sheraton is an international business with employees living and working in Turkey.... It is hard to believe that Sheraton cannot have such employees translate any and all necessary documents." Plaintiffs' Memorandum in Opposition to Dismissal at 12. They also point out that most of the relevant documents already have English translations.

For their own part, the Merciers argue that the private interest factors actually favor their position. They claim that almost all of their key witnesses reside in the United States. Bringing them to Turkey would be expensive and logistically problematic. Moreover, they are not fluent in Turkish and consequently face a greater hardship translating their testimony and documents into Turkish than Sheraton has translating into English. Sheraton responds by reiterating the centrality of Deliveli's testimony to its defense. Additionally, it contends that its relationship with the other Turkish witnesses is "truly arms-length." Thus, there is nothing to suggest that these witnesses could be persuaded to give testimony for Sheraton voluntarily. Finally, it argues that most of the witnesses plaintiffs claim are key either are not relevant to the action or can present their evidence through an affidavit.

Having considered all the arguments and responses submitted by both sides, I conclude that the private interest analysis favors the Merciers. I base this conclusion on two factors. First, the primary thrust of Sheraton's private interest claim is that key witnesses are beyond the reach of compulsory process. Yet, there is no evidence on the record that it has ever asked these witnesses to provide evidence, let alone that they have affirmatively refused to do so. Thus, while Sheraton has articulated a substantial problem, the record indicates

---

6. At a conference conducted in chambers August 2, 1990, counsel for plaintiffs represented that it was possible for Sheraton to serve letters of rogatory on these witnesses. Although this representation was not substantiated, Sheraton did not dispute it.

that it is a problem in theory only. A different case might have been presented had a witness actually refused to give testimony.

Second, *Gilbert* teaches that there is, essentially, a presumption favoring plaintiffs' selection of forum. *Gilbert*, 330 U.S. at 508, 67 S.Ct. at 843. This presumption must be overcome with a showing that the defendant's private interests in dismissal greatly outweigh plaintiffs' in staying in its chosen forum. Thus, while I am not particularly persuaded by plaintiffs' claims about their interests or the weakness of Sheraton's, there is little in Sheraton's assertions, other than the aforementioned theoretical one, which indicates that its interests outweigh plaintiffs'. Indeed, considerations such as translation and travel costs would be about equal burdens to both sides.

■ However, while the private interest analysis may favor plaintiffs, the public interest analysis does not. I believe this analysis favors dismissal to so great an extent, it overrides whatever private interests may have counselled retention of the suit. Like many federal courts, my docket is quite congested. In addition, the priorities established for the resolution of cases are such that this diversity action will be delayed too long. The facts giving rise to this case began a full eight years ago.

Far more important than my own docket, however, is the fact that this case is of minimal importance to this forum. The Merciers do not reside here. The contracts at issue were negotiated and signed in Turkey; they were to be performed in Turkey; one of the agreements stipulated that Turkish law would apply and the parties agreed that jurisdiction would be in Istanbul, Turkey. It is only because Sheraton is located in Boston—a mere fortuity—that the case is even in this district. For a jury made up of Massachusetts citizens to be pressed into service to hear this case would clearly contravene *Gilbert*, which instructed that "[j]ury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation." *Gilbert*, 330 U.S. at 508, 67 S.Ct. at 843. These same factors lead me to believe that Turkey has the greater interest in hearing this case. Dismissal, therefore, presents a prime opportunity to service the "local interest in having localized controversies decided at home." *Gilbert*, 330 U.S. at 509, 67 S.Ct. at 843.

Finally, because the operative facts in this case transpired in Turkey and because the Protocol contained an express choice of law provision stipulating that Turkish law would apply to it, I believe that Massachusetts choice of law jurisprudence mandates that Turkish law be applied to this litigation. *Bushkin Associates, Inc. v. Raytheon Co.*, 393 Mass. 622, 632, 473 N.E.2d 662, 669 (1985). Consequently, I would be required to familiarize myself with Turkish law to such a degree that I not only could control the conduct of the trial, I could also instruct the jury. This task, in my judgment, would involve untangling problems of foreign law in a forum ill equipped to do so—an endeavor the Supreme Court suggested courts avoid. *Gilbert*, 330 U.S. at 509, 67 S.Ct. at 843; *see also Piper Aircraft*, 454 U.S. at 260, 102 S.Ct. at 268 (the need to apply foreign law points to dismissal).

While I have some concern about Turkish law, this concern stems from my unfamiliarity with its particulars and not from a lack of confidence in its overall fairness. As stated, I do not believe Susan Mercier's difficulties warrant retaining jurisdiction over this case; I believe her interests can be accomodated. For these reasons, I will not grant a conditional dismissal. *Compare Lacey v. Cessna Aircraft Co.*, 862 F.2d 38 (3rd Cir.1988).

Based on the foregoing, Sheraton's motion for dismissal forum non conveniens is granted.

SO ORDERED.