Blanchard v. PSPT Ltd.                    CV-92-660-SD  05/18/95

UNITED STATES DISTRICT COURT FOR THE

DISTRICT OF NEW HAMPSHIRE


Zane S. Blanchard & Company, Inc.

      v.                                          Civil No. 92-660-SD

PSPT Ltd.


O R D E R


In this diversity action, plaintiff Zane S. Blanchard & Co., Inc. (ZSB), a New Hampshire corporation engaged in the business of representing manufacturers in the marketing and sale of heavy equipment, alleges claims for breach of contract against defendant PSPT Ltd., a foreign corporation organized under the laws of Israel and engaged in the business of manufacturing paper cutting machines.  PSPT is not registered with the New Hampshire Secretary of State to do business in New Hampshire.

Presently before the court is PSPT's motion to dismiss for forum non conveniens, to which ZSB has timely objected.[1]  In the alternative of dismissal, PSPT moves for a Rule 26(c), Fed. R. Civ. P., protective order to prevent the depositions of PSPT and

---

[1]In addition to the motion and objection, the parties have further supplemented their respective arguments with reply memoranda, which the court has reviewed and considered prior to making today's rulings.

PSPT's general manager from taking place in New Hampshire.  ZSB objects to this form of relief as well.

Background

Plaintiff alleges that in 1986 it entered into a written contract with Handasat Defus Ltd., d/b/a PSP Ltd., for the marketing and sale of paper making and converting equipment. Plaintiff further alleges that in June 1991 it received a call from the managing director of Blades Technology Ltd., who informed ZSB that it intended to acquire PSP and change its name to PSPT.[2]  In July 1991, ZSB President Stephen Dumont traveled to Israel to meet with representatives of Blades and further discuss their relationship.

In Count I of its complaint, plaintiff alleges,

> 11.  Because of the large amount of back commissions due, however, ZSB was reluctant to continue the relationship with PSP/PSPT.
> 12.  Blades told ZSB that the latter's willingness to participate would be the deciding factor in Blades' decision to take

---

[2]Blades subsequently followed through with the acquisition of PSP, now PSPT.  PSPT thus became part of the "Wertheimer Group" of companies, which includes Blades as well as another company called Iscar, Ltd.  The Wertheimer Group is Israel's "largest privately owned group of metalworking industries," PSPT Backstand promotional literature (attached to Plaintiff's Memorandum as Exhibit A), and posts sales exceeding $300 million annually.  PSPT itself has "[m]ore than 100 customers worldwide" and has "exported machines to more than 20 countries," including the United States and Canada.  Id.

over PSP.

    13.  <u>In consideration of Blades' promise to pay the back commissions due to ZSB, ZSB agreed to continue to represent PSPT in the sale of its equipment in North America.</u>

    14.  To date, ZSB has performed all of the terms and conditions of the agreement with PSPT by continuing to represent PSPT in the sale of its equipment in North America.

    15.  PSPT has not performed its part of the agreement in that it has failed to pay the back commissions due and owing to ZSB.

    16.  By reason of PSPT's breach, ZSB has suffered damages in the amount of $195,677.00.

Complaint ¶¶ 11-16 (emphasis added).

In Count II plaintiff seeks recovery from PSPT as "a 'mere continuation' of PSP," id. at ¶ 18, for PSPT's "liabilities and obligations as the successor to PSP, including payment of the commissions due and owing to ZSB," id. at ¶ 19.  Plaintiff contends that "PSPT's obligation stems not from an assumption of [the] ZSB-PSP Sales Agreement, but from its legal responsibility to pay for liabilities and obligations incurred by its predecessor."  Plaintiff's October 20, 1993, Memorandum at 13.[3]

PSPT denies its status as a "mere continuation" of Handasat Defus

_____

    [3]The court notes that plaintiff does not allege that the May 11, 1986, contract was assigned to PSPT.  Rather, plaintiff asserts that "[d]espite the fact that ZSB and PSPT did not sign a written contract, the parties continued to do business together and PSPT continued to utilize [ZSB] as its exclusive North America representative.  At all times, the terms of this agreement between ZSB and PSPT were governed by the promises made by PSPT to Mr. Dumont, including the payment of overdue commissions."  Plaintiff's Memorandum at 6.

3

Ltd., and asserts that it will show these two companies are actually two separate corporate entities.  Defendant's Memorandum at 2-3.

## Discussion

### 1.  Forum Non Conveniens

Under the federal doctrine of forum non conveniens,

> "when an alternative forum has jurisdiction to hear [a] case, and when trial in the chosen forum would 'establish . . . oppressiveness and vexation to a defendant . . . out of all proportion to plaintiff's convenience,' or when the 'chosen forum [is] inappropriate because of considerations affecting the court's own administrative and legal problems,' the court may, in the exercise of sound discretion, dismiss the case," even if jurisdiction and proper venue are established.

American Dredging Co. v. Miller, ___ U.S. ___, ___, 114 S. Ct. 981, 985 (1994) (quoting Piper Aircraft Co. v. Reyno, 454 U.S. 235, 241 (1981) (quoting Koster v. (American) Lumbermens Mut. Casualty Co., 330 U.S. 518, 524 (1947))); see also Mercier v. Sheraton Int'l, Inc., 981 F.2d 1345, 1349 (1st Cir. 1992) [Mercier II] ("The doctrine of forum non conveniens permits discretionary dismissals on a 'case by case' basis . . . where an alternative forum is available in another nation which is fair to the parties and substantially more convenient for them or the courts.") (emphasis added) (citations omitted), cert. denied, ___

4

U.S. ___, 113 S. Ct. 2346 (1993).

In making a forum non conveniens determination, the First Circuit follows the paradigm established by the Supreme Court in Gulf Oil Corp. v. Gilbert, 330 U.S. 501 (1947), and its progeny. See e.g., Mercier II, supra, 981 F.2d at 1349-58; Howe v. Goldcorp. Invs., Ltd., 946 F.2d 944, 950-53 (1st Cir. 1991), cert. denied, 502 U.S. 1095 (1992); Mercier v. Sheraton Int'l, Inc., 935 F.2d 419, 423-30 (1st Cir. 1991) [Mercier I]. Recognizing that "the plaintiff's choice of forum should rarely be disturbed,", Gulf Oil, supra, 330 U.S. at 508, the Circuit imposes on the movant "the burden of proving *both* the availability of an adequate alternative forum . . . and the likelihood of serious unfairness to the parties in the absence of a transfer to the alternative forum." Mercier II, supra, 981 F.2d at 1349 (citing, inter alia, Tramp Oil & Marine, Ltd. v. M/V Mermaid I, 743 F.2d 48, 50 (1st Cir. 1984), and Koster, supra, 330 U.S. at 524).

The first prong of this two-part analysis is itself a two-tiered inquiry: is the alternative forum "available" and is said forum "adequate"? See Mercier II, supra, 981 F.2d at 1349-50. An alternative forum "generally will be considered 'available' provided the defendant who asserts forum non conveniens is amenable to process in the alternative forum." Id. at 1349

5

(citations omitted).  PSPT concedes that, as an Israeli corporation organized under the laws of Israel, it is amenable to process in Israel.  Defendant's Memorandum at 6.

Even though a defendant may be amenable to process, "[a]n alternative forum may be inadequate . . . if 'the remedy provided by the alternative forum is so clearly inadequate or unsatisfactory that it is no remedy at all.'"  Mercier II, supra, 981 F.2d at 1350 (quoting Piper Aircraft, supra, 454 U.S. at 254).

PSPT has submitted the affidavit of Nissan Caspi, an attorney licensed to practice in the State of Israel, which indicates that

> 2.  Israeli Law permits a cause of action for breach of an oral contract.  Section 23 of the Contract [General Part] Laws (1973) provides:
> A Contract may be made orally, in writing or in some other form, unless a particular form is a condition of its validity by virtue of law or agreement between the parties.
> . . . .
> 4.  Israeli Law permits a cause of action for successor liability of corporate entities or "mere continuation."  Israeli courts will find that one corporation is the mere continuation of another and will make the successor corporation liable for the predecessor's obligations when the corporate entity is being abused for the purpose of avoiding contractual obligations.
> . . . .
> 5.  Israel's statute of limitations is governed by the Israeli Law of Prescription

6

(1958), Section 5. Under this Law a party
may bring an action before the court 7
(seven) years after the cause of action has
accrued.

Supplemental Affidavit of Nissan Caspi ¶¶ 2-5 (attached to
Defendant's Reply Memorandum) (footnote and citations omitted).
In addition, PSPT has submitted copies, although written in
Hebrew, of Israeli court opinions which allegedly support the
legal propositions asserted by Caspi.

Although the court would have preferred translated copies of
the Israeli case law and statutes submitted by the defendant, the
court is satisfied, for the purposes of the motion sub judice,
that the Caspi affidavit provides correct and accurate statements
regarding Israeli corporate and contract law. See, e.g., Mercier
II, supra, 981 F.2d at 1351-52 (moving party may demonstrate
adequacy of alternative forum's law through affidavits and
declarations of experts) (citing Lockman Found. v. Evangelical
Alliance Mission, 930 F.2d 764, 768 (9th Cir. 1991)) (other
citation omitted). However, "[t]he availability of an adequate
alternative forum is but the first step in the forum non
conveniens analysis. The more complicated inquiry is whether the
alternative forum is sufficiently more convenient for the parties
as to make transfer necessary to avoid serious unfairness." Id.
at 1354 (citing Howe, supra, 946 F.2d at 950 (citing Piper
Aircraft, supra, 454 U.S. at 259)).

## 3. Balancing the Private and Public Interest Factors

In order to sustain the present motion, PSPT "'must establish that the private and public interests weigh heavily on the side of trial in the foreign forum.'" Mercier I, supra, 935 F.2d at 424 (quoting In re Air Crash Disaster Near New Orleans, 821 F.2d 1147, 1164 (5th Cir. 1987), vacated on other grounds sub nom., Pan American Airways, Inc. v. Lopez, 490 U.S. 1032 (1989)). "Transfer is inappropriate if the effect is merely to shift inconvenience from the defendant to the plaintiff." Omni Hotels Mgmt. Corp. v. Round Hill Devs., Ltd., 675 F. Supp. 745, 752 (D.N.H. 1987) (citation omitted).

In Gulf Oil Corp., supra, the Supreme Court identified "private interest" criteria to include:

> the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; . . . and all other practical problems that make trial of a case easy, expeditious and inexpensive. There may also be questions as to the enforcibility [sic] of a judgment if one is obtained.

Gulf Oil, supra, 330 U.S. at 508; see also Mercier II, supra, 981 F.2d at 1354. The "public interest" criteria include:

> the administrative difficulties flowing from court congestion; the "local interest in having localized controversies decided at home"; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the

8

> avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty.

Piper Aircraft, supra, 454 U.S. at 241 n.6; see also Mercier II, supra, 981 F.2d at 1354.

"In weighing these considerations, the trial court must favor the plaintiff's choice of forum: 'unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed.'" Mercier II, supra, 981 F.2d at 1354 (quoting Gulf Oil, supra, 330 U.S. at 509). Moreover, this deference accorded to the plaintiff's choice of forum "is enhanced . . . when the plaintiff is an American citizen who has selected an available American forum." Id. (citing, inter alia, Piper Aircraft, supra, 454 U.S. at 256 n.23); see also Mizokami Bros. v. Baychem Corp., 556 F.2d 975, 977 (9th Cir. 1977) ("a defendant must meet an almost impossible burden in order to deny a citizen access to the courts of this country"), cert. denied, 434 U.S. 1035 (1978).


a.  Private Interest Factors

PSPT asserts that, on balance, this matter should be tried in Israel. As part of its private interest analysis, PSPT notes that the court cannot compel the attendance of PSPT witnesses located in Israel and further highlights the costs, both economic

and practical, of producing such witnesses for trial in New Hampshire. Moreover, PSPT asserts that the majority of <u>its</u> sources of proof are located in Israel. Such documentary evidence will need to be translated from Hebrew into English, and it is possible that an interpreter will need to be made available in order for PSPT witnesses to present their testimony.[4]

However, whatever translation and travel expenses PSPT must bear in litigating the case in New Hampshire are approximately equal to those which ZSB would have to bear if the locus of the case were shifted to Israel. Moreover, to the extent that the court will need to apply the law of Israel, a point that is subject to dispute among the parties and on which the court makes no opinion, "[t]his Court does recognize the difficulties inherent in applying Israel's law to the instant litigation but considers that the adversary process can illumine what is, after all, an action on a commercial contract." <u>Boudreau v. Scitex Corp.</u>, No. 91-13058-Y, 1992 WL 159667, at *5 (D. Mass. June 25, 1992).

Upon consideration of the "private interest" factors, the

_____

[4]The court is, at best, equivocal on this last issue due to the documented bilingualism of the individuals PSPT intends to call as witnesses. <u>See</u> Fax Correspondence from Alan Singer and Menachem Zilberklang to Stephen W. Dumont (attached as Exhibit E to Plaintiff's Objection); <u>see also</u> Supplemental Affidavit of Stephen W. Dumont ¶¶ 4-10 (attached to Plaintiff's Reply Memorandum).

10

court finds that neither forum emerges as more appropriate than the other. The First Circuit has indicated that "this general equipoise, combined with the presumption favoring a plaintiff's choice of forum, dictate[s] that the private interest factors weigh[] in favor of retaining jurisdiction." Mercier I, supra, 935 F.2d at 428. Not being presented with an adequate basis upon which to depart from this sensible proposition, the court declines defendant's invitation to do so.[5]

b.  Public Interest Factors

Upon reviewing the public interest factors identified in

_____

[5]Defendant points the court to a string of cases from the Southern District of New York which, aside from being nonbinding on this court, are largely inapposite. See, e.g., Sussman v. Bank of Israel, 801 F. Supp. 1068 (S.D.N.Y. 1992) (investors in Israeli bank brought suit in New York against agencies of Israeli government, private Israeli financial institution, and Israeli citizens due to Israeli government-ordered liquidation of bank), aff'd, 990 F.2d 71 (2d Cir. 1993) (per curiam); Postol v. El-Al Israel Airlines, Ltd., 690 F. Supp. 1361 (S.D.N.Y. 1988) (suit against Israeli national airline for alleged wrongful search and damage to luggage in Switzerland and for defamation and wrongful detention in Israel); Diatronics, Inc. v. Elbit Computers, Ltd., 649 F. Supp. 122 (S.D.N.Y. 1986) (securities action against Israeli corporation arising from purchase, in Israel, of controlling interest by United States corporation; additional claims alleged under Israeli common law for fraud and breach of contract), aff'd without opinion, 812 F.2d 712 (2d Cir. 1987); Bitton v. TRW, Inc., No. 93 Civ. 7407 (PKL), 1994 WL 414368, at *2 (S.D.N.Y. Aug. 5, 1994) ("The instant case arises out of an occupational injury involving an Israeli employee working for an Israeli company pursuant to an Israeli collective bargaining agreement.").

<u>Piper Aircraft</u>, <u>supra</u>, 454 U.S. at 241 n.6, and applying same to the facts at bar, the court finds that plaintiff's choice of forum should not be disturbed.

At bottom, this litigation stems from the sales agency agreement which existed between ZSB and PSP and the back commissions allegedly due ZSB for their performance thereunder. Under said agreement, ZSB, from its headquarters in New Hampshire, was to assume the North American marketing and sales efforts for PSP. As part of its acquisition of PSP, "Blades[] promise[d] to pay back the commissions due to ZSB [and] ZSB agreed to continue to represent PSPT in the sale of its equipment in North America." Complaint ¶ 13. Thus performance, at least in terms of payment, was contemplated to occur in New Hampshire. Since it is "beyond dispute that New Hampshire has a significant interest in redressing injuries that actually occur within the State," <u>Keeton v. Hustler Magazine, Inc.</u>, 465 U.S. 770, 776 (1984), New Hampshire's interest in adjudicating this dispute is at least as great as Israel's. By the same token, the relatedness between the forum and the injury dispel any notion of "unfairness" or "burden" in terms of imposing jury duty on New Hampshire citizens because there is a "'local interest in having localized controversies decided at home. . . .'" <u>Piper Aircraft</u>, <u>supra</u>, 454 U.S. at 241 n.6 (quoting <u>Gulf Oil</u>, <u>supra</u>, 330 U.S. at

12

509).

Perhaps most compelling, however, is the procedural posture of this case.[6] As of April 25, 1995, trial of this case is scheduled to begin on August 22, 1995, having been rescheduled from July 25, 1995. Thus, not only is the court's caseload

---

[6]The court notes the timing of defendant's motion and iterates that a "defendant must submit a timely motion for *forum non conveniens*." Lugones v. Sandals Resorts, Inc., 875 F. Supp. 821, 823 (S.D. Fla. 1995) (citing In re Air Crash Disaster, supra, 821 F.2d at 1165). Plaintiff's complaint was filed with the court on December 31, 1992, which defendant answered on August 13, 1993. On September 30, 1993, defendant moved to have the action dismissed due to, inter alia, lack of personal jurisdiction. Said motion was denied on December 20, 1993. Although originally scheduled for trial beginning on January 17, 1995, the court rescheduled the trial to begin August 22, 1995, due to the pendency of certain outstanding discovery motions.

On February 8, 1995, nearly eighteen months after answering the complaint and fourteen months after the denial of their jurisdiction-based motion to dismiss, defendants filed the instant motion to dismiss for forum non conveniens. "If a defendant files a *forum non conveniens* objection for the first time after the defendant has answered, deposed witnesses, and caused the plaintiff to incur expense in preparing for trial, then the court may deny the defendant's motion." Lugones, supra, 875 F. Supp. at 823 (citations omitted). "'While untimeliness will not effect a waiver, it should weigh heavily against the granting of the motion because a defendant's dilatoriness promotes and allows the very incurrence of costs and inconvenience the doctrine is meant to relieve.'" Id. (quoting In re Air Crash Disaster, 821 F.2d at 1165 (citations omitted)). Although the court is free to adopt a "'dim view'", id., of the instant motion due to the perceived untimely character of defendant's motion, the court's ultimate resolution of the forum non conveniens issue is not based upon such a prejudicial factor, but rather upon a careful weighing of the Gulf Oil public and private interest factors as applied to the facts presented by this case.

13

current, but with the resolution of the issues sub judice, the matter should proceed expeditiously to trial within the next three months.

After carefully weighing all of the private and public interest factors on each side, the court remains unpersuaded that the balance of conveniences is strongly in defendant's favor or that the interests of justice would be better served by adjudicating this dispute in Israel rather than New Hampshire. Since plaintiff's choice of forum is one that should only "rarely" be disturbed, see Gulf Oil, supra, 330 U.S. at 507; Howe, supra, 946 F.2d at 950, the court finds and rules that the trial of this matter will remain in the present forum.

4. PSPT's Motion for Protective Order

Pursuant to Rule 30(b)(6), Fed. R. Civ. P., ZSB noticed the deposition of PSPT to take place on January 18, 1995, at the offices of plaintiff's counsel in Hampton, New Hampshire. ZSB additionally noticed the deposition of PSPT's general manager, Menachem Zilberklang, for January 19, 1995, to likewise be conducted in Hampton, New Hampshire. Said depositions have been held in abeyance, by mutual consent, pending the outcome of the instant motion for protective order.

Rule 26(c), Fed. R. Civ. P., provides, in relevant part,

14

that

> Upon motion by a party . . . and for good
> cause shown, the court in which the action is
> pending or alternatively, on matters relating
> to a deposition, the court in the district
> where the deposition is to be taken may make
> an order which justice requires to protect a
> party or person from annoyance,
> embarrassment, oppression, or undue burden or
> expense . . . .

Although PSPT has not determined who will be its Rule 30(b)(6) corporate representative, the company asserts that it will be a "key employee." Defendant's Memorandum at 32. The combination of this as yet unnamed deponent in conjunction with Zilberklang will cause PSPT to "have two key employees absent from work for at least 3 days." Id. PSPT asserts that it will incur economic costs as well. In addition to paying for deponent's accommodations in the United States, PSPT will need to outlay $3,200 for two round-trip tickets from Israel to Boston--a trip that takes approximately 14 hours each way. Id. Thus, PSPT argues, "[t]he expense and business disruption . . . incur[red] by producing deponents in New Hampshire, as well as the personal inconvenience to the deponents, warrant the entering of a protective order." Id.

Although subject to modification when justice so requires, the general rule is "that '[t]he deposition of a corporation by its agents and officers should ordinarily be taken at its

principal place of business,' especially when, as in this case, the corporation is the defendant."  Salter v. Upjohn Co., 593 F.2d 649, 651 (5th Cir. 1979) (quoting 8A CHARLES A. WRIGHT, ET AL, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2D § 2112, at 81 (1994)); see also 4 JAMES WM. MOORE, MOORE'S FEDERAL PRACTICE ¶ 26.22[1.-4], at 26-369 (1995) ("the depositions of officials of a corporate party should ordinarily be taken at the corporation's principal place of business").

The rationale for this general rule is that a defendant is not before the forum court by choice, but because the plaintiff brought suit here.  Plaintiff should not thereafter be heard to complain about being required to take some discovery where defendant and its officers and directors are located, even if that location is far beyond the forum court.  See, e.g., Work v. Bier, 107 F.R.D. 789, 792 n.4 (D.D.C. 1985) (citing, inter alia, Salter, supra, 593 F.2d at 651; Dunn v. Standard Fire Ins. Co., 92 F.R.D. 31 (E.D. Tenn. 1981)).

Although the court is sensitive to the apparent fiscal disparity between ZSB and PSPT,[7] it can neither agree with ZSB that PSPT's complaints of undue burden and expense are "ridiculous," Plaintiff's Memorandum at 38, nor find that ZSB has

---

[7]Whereas PSPT is part of the Wertheimer Group, see supra note 2, "ZSB is a small New Hampshire corporation employing three individuals."  Plaintiff's Memorandum at 38.

16

identified the requisite "peculiar circumstances" to avoid the aforementioned general rule. See Work, supra, 107 F.R.D. at 792 n.4 ("peculiar circumstances" should not be limited to the relative financial burdens of the parties to the litigation). Accordingly, PSPT's motion for protective order must be and herewith is granted.[8]

_____

[8]Despite this adverse ruling, the court notes that ZSB is not strictly limited thereby to deposing PSPT and Zilberklang in Israel, although it clearly remains free to do so. ZSB, at its option, may seek to take the depositions of PSPT and Zilberklang, on proper notice, in Hampton, New Hampshire, provided it advances "to the other party the expenses to be incurred in traveling to the designated place." 4 MOORE'S, supra, ¶ 26.22[1.-6], at 26-371; see also Sugarhill Records, Ltd. v. Motown Record Corp., 105 F.R.D. 166, 172 (S.D.N.Y. 1985); Financial Gen. Bankshares v. Lance, 80 F.R.D. 22, 23 (D.D.C. 1978). The reasonable expenses thereof may be taxed as costs of the litigation, should ZSB prevail. See Huynh v. Werke, 90 F.R.D. 447, 449 (S.D. Ohio 1981); Hyam v. American Export Lines, Inc., 213 F.2d 221, 223 (2d Cir. 1954) (Harlan, J.). Alternatively, pursuant to Rule 30(b)(7), Fed. R. Civ. P., "[t]he parties may stipulate in writing or the court may upon motion order that a deposition be taken by telephone . . . ." Judge Ensler perhaps said it best in finding "positively no reason to add the cost of two trans-Atlantic flights and hotel accommodations to the [litigation] tab where the same task can be accomplished with two simple phone calls." Rehau, Inc. v. Colortech, Inc., 145 F.R.D. 444, 447 (W.D. Mich. 1993).

So long as the method chosen ensures accuracy and trustworthiness equivalent to stenography, and does not operate to prejudice a party's interests, id. at 446, telephonic depositions may, in this instance, operate "to secure the just, speedy, and inexpensive determination of [the instant] action." Rule 1, Fed. R. Civ. P. Such a common-sense approach may serve to ameliorate the parties' joint concerns of burden and expense while accommodating their respective needs for appropriate discovery.

17

## Conclusion

For the reasons set forth herein, defendant PSPT's motion (document 33) is granted in part and denied in part.

The motion to dismiss for forum non conveniens is denied. This cause will proceed to trial, currently scheduled to begin August 22, 1995, in the United States District Court for the District of New Hampshire.

The motion for protective order is granted. Depositions of PSPT and Menachem Zilberklang will currently take place, if at all, in Israel.

SO ORDERED.

_____
Shane Devine, Senior Judge
United States District Court

May 18, 1995
cc:  Lawrence M. Edelman, Esq.
     Michael Lenehan, Esq.
     Bernard J. Bonn III, Esq.

18